UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EDNA L. PARSON,                          )
                                         )
                    Plaintiff            )
                                         )
          vs.                            )        CAUSE NO. 3:06-CV-100 RM
                                         )
CONTINENTAL CASUALTY                     )
COMPANY,                                 )
                                         )
                    Defendant            )

OPINION and ORDER

This cause is before the court on the motion of Continental Casualty Company for summary judgment on Edna Parson's claims against company contained in her amended complaint. CNA asserts there is no genuine issue of material fact concerning the reasonableness of its decision to terminate payment of long-term disability benefits to Ms. Parson. For the following reasons, the court grants CNA's motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine

issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

In August 2002, Ms. Parson suffered a tear to the rotator cuff in her right shoulder while working as a core assembler for Hayes Lemmerz International-Wabash, Inc. She underwent surgery, performed by Dr. William M. Rutledge on October 16, 2002, to repair the tear. Following surgery, she began physical therapy and in January 2003 returned to Hayes Lemmerz on light duty work.

Dr. Rutledge determined in March 2003 that Ms. Parson had reached maximum medical improvement and recommended a permanent work restriction of lifting no more than 30 pounds and doing no overhead work. Ms. Parson

underwent a functional capacity evaluation in May. Dr. Rutledge then concluded her work restrictions should be modified in that she could lift floor to waist up to 20 pounds occasionally, 10 pounds frequently, and 5 pounds constantly; waist to shoulder 15 pounds occasionally, 10 pounds frequently, and 5 pounds constantly; and shoulder to overhead 10 pounds occasionally and 5 pounds frequently. Ms. Parson continued to work at Hayes Lemmerz under the restrictions established by Dr. Rutledge until September 2003, when the company determined it could no longer accommodate her restrictions. She was terminated from her job on September 2.

Ms. Parson applied to receive disability benefits in October 2003. She was a participant in an ERISA-governed employee benefit plan issued to Hayes Lemmerz through CNA. Under the Plan, an eligible plan participant could receive disability benefits for 24 months if she was continuously unable to perform the material duties of her own occupation (the Plan's "own occupation" standard) and could receive disability benefits after that time only if she was continuously unable to engage in any occupation for which she was qualified (the Plan's "any occupation" standard). CNA had discretionary authority under the terms of the policy to determine eligibility for benefits.

CNA approved Ms. Parson's application and, by letter dated March 24, 2004, informed her that eligibility to receive long-term disability benefits became effective February 1, 2003. Ms. Parson received a lump sum check for the coverage period already passed and began receiving monthly disability checks.

CNA also advised Ms. Parson that under the Plan's terms, her disability benefits would continue for a period of 24 months, until January 31, 2005, under the Plan's "own occupation" standard and at the end of the 24 month period eligibility to receive further disability benefits would be determined under the Plan's "any occupation" standard.

In April 2004, Ms. Parson met with Raenell May, a vocational case manager for CNA, to assess her further eligibility for disability benefits. Ms. Parson reported to Ms. May that she was able to perform household chores with assistance from her husband, drive short distances, walk with no problem, and use a computer for an hour at a time. Ms. Parson also noted that she had an eleventh grade education.

Ms. May wrote to Ms. Parson the following day to advise her that after January 31, 2005, she would no longer qualify for disability benefits. Ms. May stated she had considered Ms. Parson's interview responses, her educational level, the work restrictions Dr. Rutledge had established, and the medical and vocational documentation in her file and concluded that Ms. Parson could work, for example, in "Small Parts Assembly (no reach/lift over head), Quality Control Inspection (no reach/lift over head), and Customer Service Representative." Ms. May contacted Ms. Parson again on November 17, 2004 and learned that Ms. Parson's activities and restrictions remained essentially unchanged.

On April 18, 2005, Ms. Parson submitted a handwritten appeal to CNA. The following month, Ms. Parson's attorney forwarded additional medical records to

CNA, including a June 11, 2003 letter from Dr. Rutledge analyzing Ms. Parson's functional capacity evaluation results, a July 2, 2003 record from Methodist Sports Medicine Center, records from Dr. Rutledge dated December 2 and 9, 2004, and X-rays from October 14 and November 9, 2004. Ms. Parson's attorney also advised CNA that Ms. Parson had seen Dr. Snead for a second opinion concerning her continued shoulder pain and, when an MRI revealed a recurrent tear of the supraspinatous tendon in her right shoulder, Ms. Parson had undergone a second surgery on April 20, 2005.

CNA requested copies of Ms. Parson's updated medical records and, upon receipt, referred Ms. Parson's file to University Disability Consortium for review. Dr. James P. Elmes conducted an independent review of Ms. Parson's file. He examined her medical history and records and contacted Dr. Rutledge for more information about Ms. Parson's condition and restrictions following her second surgery. Dr. Elmes concluded that reasonable restrictions for Ms. Parson would include lifting 25 pounds from floor to waist, 25 pounds from waist to shoulder, overhead reaching, and 5 pounds overhead lifting.

Upon receipt of Dr. Elmes' findings, Ms. May confirmed that the occupations she identified earlier fell within the guidelines established by Dr. Elmes and concluded that Ms. Parson's work restrictions didn't prevent her from performing sedentary work with requirements that didn't exceed her limitations. Ms. Parson's appeal was denied and CNA informed her that the decision to terminate her long-term disability benefits had been upheld. Ms. Parson filed this suit, alleging that

CNA had wrongfully denied her benefits in violation of 29 U.S.C. § 1132(a)(1)(B). She seeks recovery of benefits due, attorney fees, and costs.

The parties acknowledge that the Plan grants CNA discretionary authority to interpret the Plan's terms and provisions and determine eligibility for benefits, so the court reviews CNA's decision to deny Ms. Parson's request for continued benefits under an arbitrary and capricious standard. Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 827 (7th Cir. 2004). If CNA "makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.,* one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then [CNA's] decision is final." Exbom v. Central States SE & SW Areas Health & Welfare Fund, 900 F.2d 1138, 1143 (7th Cir. 1990); *see also* Tegtmeier v. Midwest Operating Engineers Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2004) ("[T]he administrator's decision will only be overturned if it is 'downright unreasonable.'").

Ms. Parson argues that CNA's decision was arbitrary and capricious because her low back pain and level of education weren't considered. Ms. Parson first says "the medical evidence clearly establishes that [she] suffered with low back pain," but she hasn't designated any evidence to support her claim in this regard, alleged that her back pain resulted in additional work restrictions not considered by the examining physicians or CNA, or explained how her low back pain could have or would have affected her ability to perform sedentary work.

6

Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument. Perfunctory or undeveloped arguments are waived.").

Ms. Parson's second claim – that CNA didn't consider the fact of her eleventh grade education – isn't supported by the record. CNA considered Ms. Parson's education. The April 30, 2004 letter to Ms. Parson from Raenell May, CNA's Vocational Case Manager, reads in relevant part as follows:

> You also stated that you have an eleventh grade education.
> Your file was referred to me, a Vocational Case Manager, for a vocational assessment to determine other gainful occupations you can perform. Based upon your current level of functionality, coupled with your past vocational and educational history, it was determined that you are not able to perform the duties of your occupation of Core Assembly Person as it was performed, but can perform alternative work by the end of the Own Occupational period.
> The following are a sampling of the alternative occupations that you would be able to perform: Small Parts Assembly . . ., Quality Control Inspection . . ., and Customer Service Representative. These are examples of occupations that you could perform with your current education and work history.

Deft. Exh. E (AR 0289 - AR 0290).

Ms. Parson's medical evidence and work history confirms that she had lifting restrictions based on her shoulder injury and resulting pain, and the record before the court establishes that CNA took those work restrictions into account when evaluating Ms. Parson for renewal of her disability benefits. Ms. Parson has pointed to nothing in the record to suggest that additional limitations based her back pain should have been, but weren't, considered by CNA in its evaluation of her eligibility for disability benefits. Nor does the record support her claim that

CNA didn't consider her educational limitations. The court concludes that CNA's determination that Ms. Parson was not unable to perform any type of work for which she was qualified but, instead, was able to perform sedentary work (under the Plan's "any occupation" standard) was an informed decision, supported by the medical records and other information in her file, and, therefore, not arbitrary or capricious.

The motion of Continental Casualty Company for summary judgment [docket # 19] is GRANTED and the clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED:   __March 26, 2007__


___/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court

8